649 F.2d 1128
 81-2 USTC P 9533
 Joerene INGRAM and Laurel A. Bates, Trustee, Plaintiffs-Appellants,
v.
CITY OF DALLAS DEPARTMENT OF HOUSING & URBAN REHABILITATION,
et al., Defendants,
United States of America (Internal Revenue Service),
Defendant-Appellee.
 No. 79-3888.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 July 6, 1981.
Rehearing and Rehearing En Banc Denied Sept. 28, 1981.
 L. Lynn Elliott, Charles A. Thompson, Dallas, Tex., for plaintiffs-appellants.
 M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Section, William S. Estabrook, Wynette J. Hewett, Attys., Tax Div., Dept. of Justice, Washington, D. C. for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Texas.
 Before CHARLES CLARK, TATE and WILLIAMS, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 This case involves an appeal from the summary judgment granted the federal government in the government's undertaking to foreclose its federal tax liens on the Texas homestead of one of appellants, Joerene Ingram, and her former spouse, Donald Ingram, for the sole tax liability of Donald Ingram relating to one federal tax and the joint tax liability of Donald and Joerene Ingram relating to another federal tax.
 
 
 2
 During their marriage, Donald and Joerene Ingram acquired, as community property, a residence located in Dallas, Texas. They claimed this property as their homestead under Texas law. See Tex.Const. Art. XVI, §§ 50-52.
 
 
 3
 In 1972 and 1973, assessments were made under § 6672 of the Internal Revenue Code of 1954, 26 U.S.C. § 6672 (1976), against Donald Ingram, President of Dallas Auto Damage Appraisers, Inc. (DADA), as the person responsible for the collection and payment of social security and withholding taxes from the wages of the employees of DADA. The assessments related to unpaid taxes withheld from wages of employees of DADA from the first quarter of 1971 through the second quarter of 1972. After payments on account of these liabilities were made, there remains unpaid $9,330.51, plus interest.
 
 
 4
 In 1973, an assessment was made in the amount of $283.33, plus interest, against both Donald Ingram and Joerene Ingram relating to their unpaid income tax for the taxable year 1971. This amount remains unpaid at present.
 
 
 5
 On March 19, 1975, around which time the Ingrams were seeking a divorce, the Ingram's residence was destroyed by fire. The home was insured and the proceeds of the policy, approximately $50,000, were deposited into the registry of a Texas Domestic Relations Court. On September 3, 1975, the Ingrams obtained a divorce. Joerene Ingram was awarded custody of the two children of the marriage. In connection with the divorce, the Ingrams entered into a property settlement agreement in which they agreed to the disposition of their community property, including the real property claimed as their homestead. After the payment of sums previously approved by the state Domestic Relations Court, the Ingrams agreed to divide the balance of the proceeds equally. They further agreed that Donald Ingram would convey his interest in the real property to Joerene Ingram in exchange for $1,500.00, to be paid from the proceeds of the sale of the property. With respect to their taxes, the Ingrams agreed that they would file separate income tax returns for the taxable year 1974, that Donald Ingram would pay any income tax on joint income for 1974, and that he would "hold Wife harmless for any deficiencies or assessments for the years 1971 through 1973."
 
 
 6
 The real property was conveyed to Laurel Bates, as trustee for Joerene Ingram. Joerene Ingram tried to sell the property, but was unable to find a purchaser for it. Joerene Ingram then received notice from the City of Dallas Department of Housing and Urban Rehabilitation that unless she complied with local ordinances the remains of the fire-damaged residence would be demolished. Following a hearing, notice requiring demolition was given. Joerene Ingram and Laurel Bates, appellants here, then instituted this suit in Texas state court to quiet title to the property, to remove the liens, and to enjoin demolition of improvements located on the property. The defendants were the United States, the City of Dallas Department of Housing and Urban Rehabilitation, and several creditors claiming an interest in the property.[1]
 
 
 7
 After the suit was removed to the United States District Court for the Northern District of Texas, the government counterclaimed against appellants and Donald Ingram, added as a defendant on the counterclaim, for, inter alia, foreclosure of the tax liens for the sole liability of Donald Ingram for unpaid withholding taxes and for the joint liability of Donald and Joerene Ingram for unpaid income taxes. The government also cross-claimed against the other creditors. Appellants then sought summary judgment against the government and the other creditors on the ground that, as Joerene Ingram's homestead, the property was insulated from creditors' claims.
 
 
 8
 Pursuant to a stipulation of the parties that appellants' legal position would not be prejudiced thereby, the property was sold and the proceeds, approximately $16,250.00, were placed in an escrow account pending the outcome of this suit. The stipulation also disposed of all claims except those of the government and E. M. Kahn & Company, a defendant creditor.[2] The government opposed appellants' motion for summary judgment on the ground that, in view of the division of the fire insurance proceeds by the Ingrams and their intent, as allegedly reflected in the divorce decree, to sell the property,[3] there were material questions of fact concerning whether the property remained Joerene Ingram's homestead. In addition, the government sought summary judgment on its counterclaims against Joerene and Donald Ingram on the ground that even if the property were a homestead, the state homestead exemption laws were ineffective against the federal tax liens.[4] The district court denied appellants' motion for summary judgment and granted, without explanation, the government's cross-motion for summary judgment on its counterclaims.[5] Appellants seek review of this judgment.
 
 
 9
 Today this Court has decided United States v. Rogers, 649 F.2d 1117 (5th Cir. 1981), a case similar to the one at hand in that it too involved an attempt by the government to foreclose its federal tax liens on Texas homestead property to collect unpaid taxes. In Rogers, we discussed at length the law in this and other circuits regarding the enforceability of federal tax liens on state homestead property. Those legal principles are equally valid with respect to the instant case. Accordingly, if both spouses have federal tax liability, and the federal tax assessment was made against both spouses, then the government may foreclose its tax lien against the homestead property owned equally by the spouses. United States v. Estes, 450 F.2d 62 (5th Cir. 1971); Shambaugh v. Scofield, 132 F.2d 345 (5th Cir. 1942). If only one spouse is liable for the federal taxes for which the assessment was made and the lien arose, however, then the question whether the federal government may execute that lien on homestead property of the taxpayer and his or her nontaxpayer spouse depends upon the nature of the homestead interest under state law. If a homestead interest is merely an exemption from general creditors under state law, then federal levy may be had. If, however, state law confers a present property right to a person possessing a homestead interest, then the lien may not be foreclosed for as long as the nontaxpayer spouse maintains his or her homestead interest under state law. United States v. Rogers, 649 F.2d at 1125-1126; Weitzner v. United States, 309 F.2d 45, 47-48 (5th Cir. 1962), cert. denied, 372 U.S. 913, 83 S.Ct. 727, 9 L.Ed.2d 720 (1963); see also United States v. Hershberger, 475 F.2d 677, 682 (10th Cir. 1973). Since a Texas homestead interest is a property right under Texas law, see United States v. Rogers, 649 F.2d at 1126-1127, the government could not levy a tax lien on a nontaxpayer spouse's homestead for as long as she maintained her homestead interest under Texas law.
 
 
 10
 Applying these principles to the instant case, it is clear that the government may foreclose its tax lien on the proceeds from the sale of the homestead property to collect the $283.33, plus interest, for the unpaid income tax owed by both Joerene and Donald Ingram. Both Joerene Ingram and Donald Ingram are liable for this tax. Therefore, under Estes and Shambaugh, any homestead interest Joerene Ingram may have in those proceeds is subordinate to the government's lien relating to that tax. Since there is no genuine issue of a material fact on this point, the district court acted correctly in granting summary judgment in favor of the government for levy of the lien for the unpaid income tax. We affirm this portion of the district court's decision.
 
 
 11
 The district court erred, however, in granting summary judgment to the government to the extent that the summary judgment also permitted the government to execute its lien relating to the $9,330.51, plus interest, in unpaid withholding taxes assessed against Donald Ingram. Only Donald Ingram is liable for these taxes; Joerene Ingram has no liability with respect to them. Accordingly, under Rogers and Weitzner, the government could not reach the proceeds of the sale of the realty to collect this sum, assuming Joerene Ingram maintained her homestead interest in the property under Texas law.
 
 
 12
 There appears from the record, however, a genuine issue of whether Joerene Ingram in fact maintained her homestead interest so as to entitle her to assert it now. Under Texas law, homestead property is "abandoned," or loses its homestead character, if the use of the property is discontinued without the intention of returning to it again. Long Bell Lumber Co. v. Miller, 240 S.W.2d 405, 407 (Tex.Civ.App. Amarillo 1951, no writ). The Ingrams' division of the fire insurance proceeds,[6] their speculative intent, as reflected in their divorce agreement,[7] to sell the property, and Joerene Ingram's subsequent efforts to sell the property which, we note, began before the stipulation of the parties that she could do so raise the fact question whether Joerene Ingram had abandoned the homestead and lost her homestead interest. Since there is a genuine issue of a material fact concerning the existence of Joerene Ingram's asserted homestead interest, the district court erred in granting summary judgment to the government with respect to the enforcement of the tax lien relating to the $9,330.51 in unpaid withholding taxes, plus interest. We accordingly reverse this part of the district court's judgment and remand for a trial to determine whether Joerene Ingram continues to possess a homestead interest which she may assert against federal levy for her former husband's federal withholding tax liability.
 
 
 13
 For the foregoing reasons, the judgment of the court below is AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.
 
 
 
 [1]
 White Rock National Bank, Northpark National Bank, and E. M. Kahn & Company
 
 
 [2]
 Defendant E. M. Kahn & Company claimed an interest in the property by virtue of its judgment lien in the amount of $389.42, plus costs, obtained on August 13, 1974. Defendant White Rock Bank disclaimed any interest in the property, and defendant Northpark National Bank failed to answer the complaint. The City of Dallas Department of Housing and Urban Rehabilitation consented to the sale of the property and agreed that the purchaser would bear responsibility for complying with local ordinances
 
 
 [3]
 The Ingrams' property agreement incident to their divorce provided in part that Joerene Ingram was to receive all title and interest in the real property that had been the Ingrams' residence, "subject to the payment to (Donald Ingram) of the sum of $1,500.00 from the proceeds of the sale (of the property) when sold." (Emphasis added)
 
 
 [4]
 The government also sought summary judgment on its cross-claims against the remaining creditors on the ground that the sole creditor asserting a claim against the property, E. M. Kahn & Co., acquired its judgment lien after notices of the tax liens had been filed
 
 
 [5]
 The court also granted summary judgment to the government on its cross-claims against the other creditors
 
 
 [6]
 The mere fact that the Ingrams' residence was destroyed by fire and that the Ingrams received insurance proceeds for the loss did not in itself destroy the Ingrams' homestead interest. Under Texas law, proceeds of an insurance policy on a Texas homestead are exempt from levy by the same provisions of the Texas Constitution that exempt the homestead itself; the proceeds stand in the place of that which has been destroyed. Lee v. Honea, 349 S.W.2d 110, 111 (Tex.Civ.App. Fort Worth 1961, writ ref'd n.r.e.); Johnson v. Hall, 163 S.W. 399, 402 (Tex.Civ.App. Texarkana 1914, no writ). The insurance policy proceeds are exempt from levy for a period of six months from the date when the insured had the right to demand payment from the insurance company. Walter Connally & Co. v. Hopkins, 195 S.W. 656, 661 (Tex.Civ.App. Texarkana 1917), aff'd, 221 S.W. 1082 (Tex. Comm'n App. 1920, holding approved)
 We cannot determine from the record the date on which the Ingrams had the right to demand payment for their fire loss from their insurance company. We thus cannot determine whether the six-month grace period under Texas law for using the insurance proceeds to rebuild the homestead residence or to reinvest in a new one expired prior to the district court's order on January 31, 1979, allowing appellants to sell the property without incurring any prejudice to their legal rights in the litigation.
 
 
 [7]
 See note 3, supra